IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TONI J. TURNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-808 |
| | § | |
| WELLS FARGO BANK, NA, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant Wells Fargo Bank, NA's Motion for Final Summary Judgment (Document No. 25). Plaintiff has filed no response, and the motion is therefore deemed unopposed pursuant to Local Rule 7.4.

## I.   Background

In July 2002, Plaintiff Toni J. Turner ("Plaintiff") executed a Note in the amount of $256,000 in favor of Homeline Mortgage Corporation secured by a Deed of Trust on her home located at 14519 Timbergreen Drive, Magnolia, Texas 77355 ("the Property").[1] The Note and Deed of Trust required Plaintiff to make monthly payments of principal and interest in the amount of $1,618.10,[2] and to make monthly payments for escrow items, including property taxes and

---

[1] Document No. 25, ex. 2 (Note); id., ex. 3 (Deed of Trust).

[2] Id., ex. 2 ¶ 3; id., ex. 3 ¶ 1.

insurance, unless the lender waived the escrow requirement.[3] At the time of origination, the escrow requirement was waived.[4]

In February 2010, Defendant Wells Fargo Bank, NA ("Defendant"), the current servicer and mortgagee of record for Plaintiff's mortgage,[5] determined that Plaintiff had failed to pay her 2009 property taxes for Montgomery County.[6] On February 19, Defendant sent to Plaintiff a notice that if she did not provide proof of payment by March 31, 2010, Defendant would pay the overdue taxes and establish an escrow account for past and future tax payments.[7] Plaintiff did not pay her taxes by the March 31 deadline.[8] Defendant subsequently established an escrow account on Plaintiff's mortgage.[9] On April 2, Defendant notified Plaintiff that it had done so, and that Plaintiff's monthly payments would increase.[10] On April 8, Defendant sent to Plaintiff an Escrow Disclosure Statement and Notice of New Mortgage Payment, listing two alternative higher monthly payments based on whether or not she

---

[3] Id., ex. 3 ¶¶ 1, 3.

[4] Id., ex. 1 ¶ 6; id., ex. 15 at 12:13-17.

[5] Document No. 25 at 3; id., ex. 1 ¶ 2.

[6] Id., ex. 1 ¶ 6.

[7] Id., ex. 5.

[8] Id., ex. 15 at 24:23-25.

[9] Id., ex. 1 ¶ 7.

[10] Id., ex. 6.

paid her escrow shortage in full, and advising Plaintiff that her
new payment amount would be effective on June 1, 2010.[11]  Plaintiff
paid only the principal and interest due on June 1, and did not pay
the amounts due for the escrow and escrow shortage.[12]

Plaintiff alleges that she contacted Defendant after receiving
notice that her monthly payment had increased, and "was given
specific instruction by the Wells Fargo agent to continue to send
in the regular monthly payment of $1,618.10 until the matter could
be straightened out."[13]  Plaintiff contends that she complied with
this instruction,[14] and that she continued to contact Defendant,
"speaking with a different person every time."[15]

---

[11] Id., ex. 7.  If Plaintiff paid off her escrow shortage of
$4,653.69 in full, her new monthly payment would be $1,847.12.
Otherwise, Defendant would spread payment of the escrow shortage
over 12 months, and Plaintiff would be required to make payments
totaling $2,234.93 per month.  Id.

[12] Document No. 25, ex. 1 ¶ 8.

[13] Document No. 1, ex. B.7 ¶¶ 4, 7 (1st Am. Pet.).  Plaintiff
alleges that she was originally told that Defendant had imposed an
escrow account due to a problem with her homeowners insurance
policy, but was later informed that it was "because Wells Fargo had
mistakenly paid the ad valorem taxes with Montgomery County
Appraisal District even though Plaintiff had already paid it."
Id., ex. B.7 ¶¶ 4-6.  The summary judgment evidence is that
Plaintiff's insurance carrier, Allstate, notified Defendant on
March 4, 2010, that Plaintiff's policy would be cancelled on March
24 if her premium was not received.  Document No. 25, ex. 8.
Allstate provided to the lender proof of coverage beginning on
March 30, and Defendant charged Plaintiff for lender-placed
insurance during the gap from March 24 to March 30.  Id., ex. 1
¶ 11.

[14] Document No. 1, ex. B.7 ¶ 7.

[15] Id., ex. B.7 ¶ 9.

Plaintiff alleges that, on September 30, 2010, she spoke with a representative in Defendant's escrow department, who advised Plaintiff "to send in the balance of the deficiency in escrow account totaling $1,877.55," and that doing so would close out the escrow account and return Plaintiff's monthly payment to its original amount.[16]   The next day, Defendant sent to Plaintiff a letter outlining the requirements to delete the escrow account, including: (1) that Plaintiff not have had any 30-day late payments during the previous 12 months and be paid current with no past due payments owed; (2) that her escrow account balance not be negative; (3) that she not have lender-placed insurance; and (4) that the loan meet a certain loan-to-value ratio as demonstrated by an appraisal.[17]   Plaintiff paid the $1,877.55 payment as instructed, but did not order an appraisal.[18]  Because Plaintiff did not consent to and pay for a current appraisal, Defendant did not delete the escrow account.[19]

Plaintiff continued to make payments equal only to the principal and interest on her loan,[20] and Defendant sent to her

---

[16] <u>Id.</u>, ex. B.7 ¶ 13.

[17] Document No. 25, ex. 12.

[18] Document No. 25, ex. 1 ¶ 9; <u>id.</u>, ex. 15 at 65:2-23.

[19] <u>Id.</u>, ex. 1 ¶ 9.

[20] <u>Id.</u>, ex. 1 ¶ 10.

4

multiple Notices of Default.[21]   On August 15, 2011, Defendant accelerated the loan,[22] and stopped accepting payments from Plaintiff.[23]

Plaintiff brought suit seeking injunctive relief to prevent the foreclosure and a declaratory judgment that Plaintiff was not in default,[24] and asserting claims for breach of contract, negligence/negligence *per se*, fraud/intentional misrepresentation, constructive fraud/negligent misrepresentation, and violations of the Texas Debt Collection Act ("TDCA") and the federal Real Estate Settlement Procedures Act ("RESPA").[25]   By Order dated April 30, 2014, after an evidentiary hearing the Court denied Plaintiff's motion for a temporary injunction.[26]   Defendant now moves for summary judgment.[27]

## II.  Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

[21] Id., ex. 11.

[22] Id., ex. 13-A.

[23] Id., ex. 1 ¶ 10.

[24] Document No. 1, ex. B.7.

[25] Id., ex. B.7.

[26] Document No. 22.

[27] Document No. 25.

any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

<u>Corp.</u>, 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  <u>Id.</u>  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  <u>Anderson</u>, 106 S. Ct. at 2513.

## III.  <u>Analysis</u>

Plaintiff seeks a declaratory judgment that she was not in default under the terms of the Note and Deed of Trust.[28]  She also asserts claims for breach of contract, negligence/negligence *per se*, fraud/intentional misrepresentation, constructive fraud/ negligent misrepresentation, and violations of the Texas Debt Collection Act and the federal Real Estate Settlement Procedures Act ("RESPA").[29]

### A.    <u>Declaratory Judgment Claim</u>

Section 3 of the Deed of Trust provides:

---

[28] Document No. 1, ex. B.7.

[29] <u>Id.</u>, ex. B.7.

7

> If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.[30]

The summary judgment evidence is that Plaintiff failed timely to pay her 2009 property taxes,[31] that property taxes were an "Escrow Item" in the Deed of Trust,[32] that Defendant notified her in writing, in accordance with the Deed of Trust, of its intention to impose an escrow account if she did not pay the taxes by March 31, 2010,[33] that she did not pay the taxes by the deadline,[34] and that Defendant then imposed the escrow account.[35]   Plaintiff subsequently failed to make payments that included the full amounts owed for escrow items.[36]  Accordingly, Plaintiff was in default.

---

[30] Document No. 25, ex. 3 ¶ 3.  Section 15 requires notices to be in writing, and deems them to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address.  Id., ex. 3 ¶ 15.

[31] Id., ex. 1 ¶ 6; id., ex. 15 at 22:25-23:2.

[32] Id., ex. 3 ¶ 3.

[33] Id., ex. 1 ¶ 6 (notice sent via first class mail); id., ex. 5.

[34] Id., ex. 15 at 24:23-25.

[35] Id., ex. 1 ¶ 7; id., ex. 6.

[36] Id., ex. 1 ¶ 10.  See also Document No. 1, ex. B.7 ¶ 7.  In September 2010, Plaintiff attempted to close the escrow account by

B.   Breach of Contract

Under Texas law, the elements of a breach of contract action are: (1) a valid contract; (2) performance or tendered performance by plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff due to the breach. Smith Intern., Inc. v. Egle Group, LLC, 490 F.3d 380, 387 (5th Cir. 2007).   The summary judgment evidence is that Plaintiff did not perform her obligations under the Deed of Trust.   Furthermore, Plaintiff has not demonstrated any default by Defendant. Accordingly, there is no genuine issue of material fact on her breach of contract claim.

C.   Negligence

Plaintiff claims that Defendant was negligent in failing to provide appropriate notice under Texas Property Code § 51.002(d) before foreclosing on the Property.[37]   Section 51.002(d) provides:

---

making a payment of $1,877.55, as she was allegedly instructed to do by Defendant's representative.  Id. ¶ 13.   However, Plaintiff did not follow the written instructions sent to her by Defendant, which also required her to order an appraisal on the property. Document No. 25, ex. 1 ¶ 9; id., ex. 12; id., ex. 15 at 65:21-23. In any event, Plaintiff was already in default at this time, and Defendant was under no obligation under the terms of the Deed of Trust to delete the escrow account.  See id., ex. 3 ¶ 3 ("Lender may revoke the waiver as to any or all Escrow Items at any time . . . .").

[37] See Document No. 1-2, ex. B.7 at 42 of 73.

9

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

TEX. PROP. CODE § 51.002(d). The summary judgment evidence is that Defendant provided Plaintiff with multiple Notices of Default, each providing Plaintiff with more than 20 days to cure,[38] and that these Notices were sent by certified mail.[39] Thus, no genuine issue of material fact remains on Plaintiff's negligence claims.

D.   <u>Fraud and Negligent Misrepresentation</u>

Plaintiff alleges that Defendant committed fraud and negligent misrepresentation by misrepresenting and/or failing to disclose that Defendant was "holding Plaintiff 'in default' despite not accepting Plaintiff's payments."[40] The uncontroverted summary judgment evidence is that Plaintiff was in default before Defendant

---

[38] Document No. 25, ex. 11 at 2 of 11 to 3 of 11.

[39] Document No. 25, ex. 1 ¶ 12.

[40] Document No. 1, ex. B.7 at 43 of 73 and 45 of 73.

stopped accepting her payments,[41] and thus, there is no genuine issue of material fact that Defendant committed fraud or negligent misrepresentation on this basis.

Plaintiff further alleges that Defendant misrepresented/failed to disclose that (1) Defendant would remedy the "escrow situation" within a specified amount of time, though Defendant had no intention of doing so; (2) Defendant would not foreclose on the Property; and (3) Defendant had fixed the escrow problem.[42] Defendant's alleged oral representations that it would and did remove the escrow account and that it would not foreclose are unenforceable due to the Statute of Frauds. Under Texas law, an agreement to loan over $50,000 must be in writing and must be signed by the party to be bound. TEX. BUS. & COM. CODE § 26.02(b). Because Plaintiff's mortgage was for an amount over $50,000, Defendant's alleged promises to modify the agreement are not enforceable. *See* Milton v. U.S. Bank Nat'l Ass'n, 508 F. App'x

---

[41] *See* Document No. 25, ex. 1 ¶ 10 ("From June 2010 to August 2011, Plaintiff sent in payments that were only in the amount of principal and interest and did not include funds owed for escrow items and the escrow shortage.  As such, these were not full payments and these payments were placed in suspense until such time as the suspense account had sufficient funds to make a full monthly payment.  In doing this, Plaintiff began to fall further and further behind on her Loan.  Around August 15, 2011, Wells Fargo accelerated the balance of the Loan.  Wells Fargo has not accepted any payments from Plaintiff after August 15, 2011. . . . Plaintiff has failed to remit the installment payment due for April 2011 and the installments that have become due after that date under the terms of the Loan.").

[42] Document No. 1, ex. B.7 at 43 of 73 and 45 of 73.

326, 328-29 (5th Cir. 2013) (agreement to delay foreclosure must be in writing to be enforceable); O'Dea v. Wells Fargo Home Mortg., Civ. A. No. H-10-4755, 2013 WL 441461, at *6 (S.D. Tex. Feb. 5, 2013) (Atlas, J.) (oral promise to make financial accommodation in connection with escrow requirements barred by Statute of Frauds). A plaintiff may not recover in tort for claims arising out of an unenforceable contract under the Statute of Frauds, unless he seeks out-of-pocket damages incurred by relying upon the defendant's misrepresentations that are not part of the benefit of the bargain. Hugh Symons Grp. v. Motorola, Inc., 292 F.3d 466, 470 (5th Cir. 2002) (citing Haase v. Glazner, 62 S.W. 3d 795, 799 (Tex. 2002)). Plaintiff presents no evidence that she has suffered such damages, and thus, her claims for fraud and negligent misrepresentation are barred by the Statute of Frauds.

Plaintiff's fraud claims separately fail because Plaintiff has produced no evidence that the alleged fraudulent statements were made knowingly or with reckless disregard for their falsity as required to demonstrate that they were fraudulent. See Milton, 508 F. App'x at 330 (plaintiff's fraud claims did not survive summary judgment because the record was "devoid of any evidence, apart from [plaintiff's] unsupported speculation, that the purported misrepresentations were made knowingly or with reckless disregard for their falsity.") (citing In re FirstMerit Bank, N.A., 52 S.W. 3d 749, 758 (Tex. 2001)).

Furthermore, Defendant's alleged promises that it would not foreclose and that it would eliminate the escrow account cannot support a negligent misrepresentation claim, as these were promises of future action rather than existing fact. *See* <u>Thomas v. EMAC Mortg. Corp.</u>, 499 F. App'x 337, 342 (5th Cir. 2012) (a promise to do or refrain from doing something in the future is not actionable as negligent misrepresentation because it does not concern an existing fact). Accordingly, there is not so much as a genuine issue of fact to support Plaintiff's fraud and negligent misrepresentation claims.

E.     <u>Texas Debt Collection Act</u>

Plaintiff alleges that Defendant violated Section 392.304(a)(14) of the Texas Finance Code, which prohibits "representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business," and Section 392.304(a)(19), which prohibits "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE § 392.304(a)(14, 19). Plaintiff does not allege the specific representations upon which her TDCA claim is based, and therefore fails to state a claim. Even assuming that Plaintiff's TDCA claim is founded on the same bases as her fraud and negligent misrepresentation claims, the claims fail for the same reasons.

13

F.    <u>Real Estate Settlement Practices Act</u>

Section 2605(e) of RESPA requires a servicer who "receives a qualified written request from the borrower" for information relating to the servicing of a loan to acknowledge receipt of such correspondence within five days, and to take action with respect to the inquiry within 30 days.   12 U.S.C. § 2605(e).   Plaintiff alleges that she sent to Defendant a qualified written request in August 2011, and that Defendant failed timely to respond.   The only correspondence from Plaintiff in the summary judgment record is a letter addressed to Barrett Daffin Frappier Turner & Engel, LLP ("Barrett Daffin"), the law firm representing Defendant in the foreclosure of the Property.[43]   RESPA requires that a servicer respond when it receives a qualified written request.   There is no evidence of record that Defendant received Plaintiff's August 30, 2011 letter, which was addressed to its outside counsel, not to Defendant.   See <u>Griffin v. Citifinancial Mortg. Co., Inc.</u>, No. 3:05CV1502, 2006 WL 266106, at *2 (M.D. Pa. Feb. 1, 2006) (plaintiff failed to state a claim under RESPA where alleged qualified written request was sent to servicer's counsel because

---

[43] *See* Document No. 25, ex. 14 (August 30, 2011 letter from Plaintiff to Barrett Daffin; <u>id.</u>, ex. 13-A (August 15, 2011 letter from Barrett Daffin to Plaintiff stating that the law firm "represents WELLS FARGO BANK, N.A., the Mortgage Servicer, in its mortgage banking activities in the State of Texas" and has been authorized to initiate legal proceedings in connection with the foreclosure of Plaintiff's Deed of Trust).

"RESPA includes no such provision allowing borrowers requesting information from their servicer to send their qualified written requests to their servicer's attorney.  Rather, the plain language imposes a duty upon the servicer to respond only when it receives a request from the borrower or the borrower's agent.").  Accordingly, Plaintiff's RESPA claim is dismissed.

IV.  <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Wells Fargo Bank, NA's Motion for Final Summary Judgment (Document No. 25) is GRANTED.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this _16 TH_ day of July, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE